## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

HARTFORD CASUALTY INSURANCE COMPANY, HARTFORD UNDERWRITERS
INSURANCE COMPANY,

        Plaintiffs,

     v.                       CASE NO. 10-02828-WGY

DESHON EWAN, PATRICK EWAN, JOHN MOSLEY d/b/a M&W TREE SERVICE,

        Defendants.

## MEMORANDUM OF DECISION

## I.   INTRODUCTION

The current dispute arises out of an accident on March 25,
2005, in Collierville, Tennessee, where the driver of a 1990 Mack
MR6 truck with an attached tree spade allegedly disregarded a red
light and struck the driver's side of DeShon Ewan's car, causing
her severe injuries.  Hartford Casualty Insurance Company
("Hartford Casualty") and Hartford Underwriters Insurance Company
("Hartford Underwriters") (collectively the "Hartford
Plaintiffs") subsequently brought this diversity action for
declaratory judgment seeking a determination whether the
commercial general liability policy issued by Hartford Casualty
provides coverage for the damages to DeShon Ewan and her husband,

1

Patrick Ewan (collectively the "Ewans") allegedly resulting from
this collision.  The Ewans filed a motion for summary judgment
and the Hartford Plaintiffs each filed a cross-motion for summary
judgment.  The parties agreed to proceed on a "case stated"
basis.

## A.    Procedural Posture

On November 18, 2010, the Hartford Plaintiffs filed a
complaint for declaratory judgment against the Ewans and John
Mosley d/b/a M&W Tree Service.  Compl. Declaratory J., ECF No. 1.
The Ewans filed an answer on December 14, 2010.  Answer Defs.
DeShon Ewan Patrick Ewan Compl. Declaratory J., ECF No. 15.  John
Mosley d/b/a M&W Tree Service ("Mosley") filed an answer on
January 11, 2011.  Answer Def. John Mosley d/b/a M&W Tree Service
Compl. Declaratory J., ECF No. 20.

On September 15, 2011, the Ewans filed a motion for summary
judgment along with a statement of facts and a supporting
memorandum.  Ewan Defs.' Mot. Summ. J. ("Ewans' Mot."), ECF No.
45; Ewans' Mot., Attach. 1, Ewan Defs.' Statement Undisputed
Material Facts ("Ewans' SOF"), ECF No. 45-1; Ewans' Mot., Attach.
2, Mem. Supp. Ewan Defs.' Mot. Summ. J. ("Ewans' Mem."), ECF No.
45-2.

On September 30, 2011, Hartford Casualty filed a cross-
motion for summary judgment along with a supporting memorandum

2

and a statement of undisputed facts. Hartford Casualty Ins.
Co.'s Mot. Summ. J. ("Hartford Casualty Mot."), ECF No. 50;
Hartford Casualty Mot., Attach. 1, Mem. Supp. Hartford Casualty
Ins. Co.'s Mot. Summ. J. ("Hartford Casualty Mem."), ECF No. 50-
1; Hartford Casualty Mot., Attach. 2., Statement Undisputed
Material Facts Supp. Hartford Casualty Ins. Co.'s Mot. Summ. J.
("Hartford Casualty SOF"), ECF No. 50-2. On September 30, 2011,
Hartford Underwriters also filed a cross-motion for summary
judgment. Hartford Underwriters Ins. Co.'s Mot. Summ. J.
("Hartford Underwriters Mot."), ECF No. 51; Hartford Underwriters
Mot., Attach. 1, Hartford Underwriters Ins. Co.'s Mem. Law Supp.
Mot. Summ. J. ("Hartford Underwriters Mem."), ECF No. 51-1;
Hartford Underwriters Mot., Attach. 2, Hartford Underwriters Ins.
Co.'s Statement Material Facts No Genuine Issue Trial ("Hartford
Underwriters SOF"), ECF No. 51-2.

On October 17, 2011, the Hartford Plaintiffs filed a joint
response to the Ewans' motion for summary judgment along with a
response to the Ewans' list of undisputed facts. Joint Resp.
Pls. Hartford Underwriters Ins. Co. Hartford Casualty Ins. Co.
Ewan Defs.' Mot. Summ. J. ("Hartford Pls.' Resp."), ECF No. 52;
Hartford Pls.' Resp., Attach. 1, Joint Resp. Pls. Hartford
Underwriters Ins. Co. Hartford Casualty Ins. Co. Ewan Defs.'
Statement Undisputed Material Facts ("Pls.' Resp. SOF"), ECF No.
52-1. That same day, Mosley filed a response to the Ewans'

3

motion for summary judgment. Resp. Def. John Mosley d/b/a M&W Tree Serv. Ewan Defs.' Mot. Summ. J., ECF No. 54.

On October 31, 2011, the Ewans filed responses to the Hartford Plaintiffs' motions for summary judgment along with responses to the Hartford Plaintiffs' statements of undisputed facts.[1]  Ewan Defs.' Resp. Hartford Casualty Ins. Co. Mot. Summ. J. ("Ewans' Resp. Hartford Casualty"), ECF No. 63; Ewans' Resp. Hartford Casualty, Attach. 1, Ewan Defs.' Resp. Hartford Casualty Ins. Co.'s Statement Undisputed Material Facts Statement Additional Facts ("Ewans' Resp. SOF Hartford Casualty"), ECF No. 63-1; Ewan Defs.' Resp. Hartford Underwriters Ins. Co. Mot. Summ. J. ("Ewans' Resp. Hartford Underwriters"), ECF No. 64; Ewans' Resp. Hartford Underwriters, Attach. 1, Ewan Defs.' Resp. Hartford Underwriters Ins. Co.'s Statement Undisputed Material Facts Statement Additional Facts ("Ewans' Resp. SOF Hartford Underwriters"), ECF No. 64-1.  On October 31, 2011, Mosley filed his responses to the Hartford Plaintiffs' motions for summary judgment.  Resp. Def. John Mosley d/b/a M&W Tree Serv. Hartford Casualty Ins. Co.'s Mot. Summ. J., ECF No. 59; Resp. Def. John Mosley d/b/a M&W Tree Serv. Hartford Underwriters Ins. Co.'s Mot. Summ. J., ECF No. 61.

---

[1] It appears that the Ewans' responses to Hartford Casualty and Hartford Underwriters' motions are identical, thus, for ease of reference, when discussing arguments raised by the Ewans in their responses, the Court will cite to the Ewans' response to Hartford Underwriters' motion for summary judgment.

4

On November 3, 2011, the Ewans filed a reply brief.  Ewan
Defs.' Reply Pls.' Resp. Mot. Summ. J. ("Ewans' Reply"), ECF No.
65.  On November 17, 2011, the Hartford Plaintiffs filed their
reply brief.  Pls.' Joint Reply Supp. Mots. Summ. J. ("Hartford
Pls.' Reply"), ECF No. 70.

On May 29, 2012, the case was reassigned to this Court
through the visiting judge program.  Clerk's Notes, ECF No. 77.
Following a telephone conference on June 18, 2012, the parties
notified the Court that they wished to proceed on a case stated
basis and waived oral argument.  See Clerk's Notes, June 21,
2012, ECF No. 83.

## B.   "Case Stated" Procedure

In lieu of summary judgment, the parties have agreed to
proceed on a "case stated" basis.  Derived from the procedures of
the courts of the Commonwealth of Massachusetts, see, e.g.,
Parker v. Morrell, 59 Mass. App. Dec. 34 (Mass. Dist. Ct. 1976),
the "case stated" procedure is firmly established in the
jurisprudence of the First Circuit.  See, e.g., Continental Grain
Co. v. Puerto Rico Mar. Shipping Auth., 972 F.2d 426, 429 n.7
(1st Cir. 1992); Boston Five Cents Sav. Bank v. Secretary of
Dep't of Hous. & Urban Dev., 768 F.2d 5, 11-12 (1st Cir. 1985);
Bunch v. W.R. Grace & Co., 532 F. Supp. 2d 283, 286-87 (D. Mass.
2008).  This is a most helpful procedural device, applicable even
in the most complex cases where the parties file cross motions

for summary judgment.  See Aspex Eyewear, Inc. v. Altair Eyewear, Inc., 818 F. Supp. 2d 348 (D. Mass. 2011).  The procedure has also found favor in the Southern District of New York.  See J.G. v. Kiryas Joel Union Free Sch. Dist., 777 F. Supp. 2d 606, 636 & n.25 (S.D.N.Y. 2011); M.F. v. Irvington Union Free Sch. Dist., 719 F. Supp. 2d 302, 306 & n.2 (S.D.N.Y. 2010); Adrianne D. v. Lakeland Cent. Sch. Dist., 686 F. Supp. 2d 361 (S.D.N.Y. 2010); Bryant v. Europadisk, Ltd., No. 07 Civ 3050(WGY), 2009 WL 1059777, at *1 (S.D.N.Y. Apr. 15., 2009); J.G. v. Briarcliff Manor Union Free Sch. Dist., 682 F. Supp. 2d 387, 389 n.2 (S.D.N.Y. 2010); New York SMSA Ltd. P'ship v. Town of Clarkstown, 603 F. Supp. 2d 715 (S.D.N.Y. 2009).

"In a case stated, the parties waive trial and present the case to the court on the undisputed facts in the pre-trial record."  TLT Constr. Corp. v. RI, Inc., 484 F.3d 130, 135 n.6 (1st Cir. 2007).  In contrast to summary judgment, where the Court must draw all reasonable inferences in favor of the nonmovant, in a case stated, the Court is "entitled to 'engage in a certain amount of factfinding, including the drawing of inferences.'"  Id. (quoting United Paperworkers Int'l Union Local 14 v. International Paper Co., 64 F.3d 28, 31 (1st Cir. 1995)).

In this session of the Court, it works as follows: whenever cross motions for summary judgment reveal that the relevant facts appear without significant dispute, the courtroom deputy clerk

offers the parties to treat the case as a case stated.  Should

they accept, as was the case here, the Court treats the

undisputed facts as the established record and draws the

reasonable inferences therefrom without the necessity of drawing

adverse inferences against each moving party.  See Fed. R. Civ.

P. 56.  The facts of the case being established, the Court

affords each party thirty minutes for final argument (not the

usual ten minutes per party when hearing argument on a motion).[2]

In due course, the Court enters findings and rulings as required

by Rule 52(a) of the Federal Rules of Civil Procedure.

## II.  **FINDINGS OF FACT**

Mosley runs M&W Tree Service, a landscaping company which

grows and transplants trees.  See Ewans' Resp. SOF Hartford

Casualty ¶ 5.  Mosley owns a 1990 Mack MR6 truck (the "Mack

truck") with an attached tree spade.  Id. ¶¶ 3-4.  With the use

of the Mack truck and the spade, the company creates a hole in

the ground at the job site, transports the dirt to the nursery,

extracts a tree from the nursery, and transports and plants the

tree at the job site.  Id. ¶ 6.  The Mack truck is also used to

transport the workers that perform the tree transplanting.  Id. ¶

8.  The truck has a cab with two seats, one for the driver and

one for the helper.  Id.

When Mosley purchased the tree spade, he personally removed

---

[2] As stated above, here the parties waived oral argument.

it from the truck where it had previously been located and transferred it to the Mack truck. Id. ¶¶ 10-11. Mosley attached the tree spade to the Mack truck with U-bolts and at one time, welding, which broke after approximately two weeks. Id. ¶¶ 13, 16. Mosley then attached steel rods from the Mack truck to the tree spade to provide additional stability. Id. ¶ 17.

Mosley had secured two liability insurance policies: a commercial automobile policy (the "Auto Policy"), issued by Hartford Underwriters, see Hartford Casualty SOF, Ex. C, Special Multi-Flex Policy Hartford ("Auto Policy"), ECF No. 50-5, and a commercial general liability policy (the "CGL Policy") issued by Hartford Casualty, see Hartford Casualty SOF, Ex. D, Hartford Spectrum Bus. Ins. Policy ("CGL Policy"), ECF No. 50-6. Hartford Casualty and Hartford Underwriters are affiliated companies. Ewans' Resp. SOF Hartford Casualty ¶ 44.

Mosley purchased the Auto Policy to insure the Mack truck. Id. ¶ 21. The Mack truck, together with the tree spade, is specifically identified in the Auto Policy as the only covered auto. Id.; Ewans' Resp. SOF Hartford Underwriters ¶ 3. Mosley purchased the CGL Policy to insure his landscaping business, M&W Tree Service. Ewans' Resp. SOF Hartford Casualty ¶ 22. Mosley purchased both policies at the same time, from the same agent, and they were delivered to him in Mississippi. Id. ¶¶ 23-24.

On March 25, 2005, Jason Whitby ("Whitby"), a subcontractor

8

of M&W Tree Service, was involved in an automobile accident with DeShon Ewan while leaving a job site (the "Auto Accident").  Id. ¶¶ 1-2.  Whitby was driving the Mack truck with the attached tree spade when he allegedly ran a red light and struck the driver's side of DeShon Ewans' car.  Id. ¶¶ 1-3; Pls.' Resp. Ewans SOF ¶ 1.

Following the Auto Accident, the Ewans filed suit against Mosley and Whitby seeking $7,500,000.00 in compensatory damages and $7,500,000.00 in punitive damages.  Ewans' Resp. SOF Hartford Casualty ¶ 36; Pls.' Resp. SOF ¶ 3.  The parties ultimately settled this lawsuit on June 9, 2006.  Ewans' Resp. SOF Hartford Casualty ¶¶ 37-38.  The Ewans allege that prior to entering into the settlement agreement, their attorney was told that there was only one applicable insurance policy, i.e., the Auto Policy, with a limit of $500,000.00 of coverage.  Id. ¶ 37.  They claim they were not informed of the existence of the CGL Policy, which provided up to $1,000,000.00 of coverage.  Id.

On April 4, 2008, the Ewans filed suit in the Chancery Court of Shelby County, Tennessee, to rescind the June 9, 2006, Release and Settlement Agreement, arguing that the CGL Policy provided coverage to which they are entitled for the Auto Accident. Ewans' Resp. SOF Hartford Underwriters ¶ 14.  The Hartford Plaintiffs removed the suit to federal court.

### III.   RULINGS OF LAW

#### A.   Applicable Law

"In the absence of an enforceable choice of law clause [in an insurance policy], Tennessee courts apply the substantive law of the state in which the policy was issued and delivered." Hollis v. Travelers Indem. Co. of Conn., No. 08-2350-STA, 2010 WL 1050991, at *4 (W.D. Tenn. Mar. 19, 2010) (quoting Standard Fire Ins. Co. v. Chester O'Donley & Assocs., Inc., 972 S.W.2d 1, 5 (Tenn. Ct. App. 1998)).  The two insurance policies at issue here do not contain a choice of law provision, but were issued and delivered to Mosley in Mississippi, Ewans' Resp. SOF Hartford Casualty ¶ 24; thus, Mississippi law will apply.

When interpreting insurance contracts, Mississippi courts consider the policy language through the lens of the substantive contract law of Mississippi.  Architex Ass'n, Inc. v. Scottsdale Ins. Co., 27 So.3d 1148, 1157 (Miss. 2010).  Mississippi contract law includes the following principles:

> [I]f a contract is clear and unambiguous, then it must be interpreted as written. A policy must be considered as a whole, with all relevant clauses together.  If a contract contains ambiguous or unclear language, then ambiguities must be resolved in favor of the non-drafting party. Ambiguities exist when a policy can be logically interpreted in two or more ways, where one logical interpretation provides for coverage.  However, ambiguities do not exist simply because two parties disagree over the interpretation of a policy. Exclusions and limitations on coverage are also construed in favor of the insured. Language in exclusionary clauses must be "clear and unmistakable," as those clauses are strictly

10

interpreted.   Nevertheless, "a court must refrain from altering   or   changing   a   policy   where   terms   are unambiguous, despite resulting hardship on the insured."

Id. (quoting U.S. Fid. & Guar. Co. v. Martin, 998 So.2d 956, 963 (Miss. 2008)).

## B.    The Auto and CGL Policies: The Dovetail Theory

The Hartford Plaintiffs make the general point that the Auto and CGL Policies are designed to provide "dovetailed coverage" so that no risk the policies together seek to insure is excluded and no risk is insured twice.  Hartford Casualty Mem. 12; Hartford Underwriters Mem. 9.   The Hartford Plaintiffs argue that the Court ought construe the Auto Policy together with the CGL Policy because the two were executed at the same time by the same agent. As a result, the Hartford Plaintiffs contend that DeShon Ewan's injuries cannot be covered both by the Auto Policy issued by Hartford Underwriters and the CGL Policy issued by Hartford Casualty.   Hartford Casualty Mem. 10; Hartford Underwriters Mem. 9-10.

The Ewans argue that the policies ought not be construed together because the policies were not executed between the same parties, and there is insufficient proof that they executed contemporaneously.   Ewan's Resp. Hartford Underwriters 9.   The issue at bar is whether this Court ought construe the two existing policies together or determine the issue of coverage exclusively pursuant to the terms of the CGL Policy.

The Mississippi Supreme Court asserted that "when separate documents are executed at the same time, by the same parties, as part of the same transaction, they may be construed as one instrument." Sullivan v. Mounger, 882 So.2d 129, 135 (Miss. 2004). When the individual agreements are "integral and interrelated parts of . . . one deal," those individual contracts should be treated as part of a single transaction. Id. at 134; see also Salcedo v. Evanston Ins. Co., 797 F. Supp. 2d 760, 776 (W.D. Tex. 2011) (noting that where a commercial general liability policy and auto policy were purchased by the same insured, from the same insurer, at the same time, using identical language, "[s]uch facts plausibly gave rise to an inference that the parties intended the two policies to dovetail and not overlap or have gaps"). Construing in concert contracts that were executed as part of the same transaction allows a court to ascertain the true intent of the parties. See One South, Inc. v. Hollowell, 963 So.2d 1156, 1164 (Miss. 2007) (explaining that the intent of the parties and the meaning of the two documents ought not be construed from isolated portions).

It is undisputed that both policies were executed at the same time. Ewans' Resp. SOF Hartford Casualty ¶¶ 23-24. The two policies were executed as part of the same transaction. The parties agree that Mosley purchased the CGL Policy to insure his landscaping business. Id. ¶ 22. Indeed, the CGL Policy

12

identified the insured as "John Mosley, d/b/a M&W Tree Service."
The Auto Policy also identified the insured as "John Mosley,
d/b/a M&W Tree Service," and insured the Mack truck and the
attached tree spade, which be used exclusively in his landscaping
business.  Id. ¶ 5.  Accordingly, the purpose of the two policies
was to create full coverage for any liability arising in relation
to M&W Tree Service.  See Neal v. Hardee's Food Sys., Inc., 918
F.2d 34, 37 (1st Cir. 1990) ("Although the parties used multiple
agreements to delineate their relationship, each agreement was
dependent upon the entire transaction. [The purchase agreement]
existed to further the single goal of making [the plaintiff a
franchisee of the defendant.]  The individual agreements were
integral and interrelated parts of the one deal."); Dexter Axle
Co. v. Baan USA, Inc., 833 N.E.2d 43 (Ind. Ct. App. 2005)
(holding that two separately executed contracts, a software
agreement and a consulting agreement were part of a single
transaction).  This Court thus holds that the Auto and CGL
Policies were part of a single transaction.

     The parties dispute whether the policies were executed
between the same parties. Ewans' Resp. Hartford Casualty 6.  It
is true that the two policies were signed by separate legal
entities: Hartford Casualty and Hartford Underwriters.  The two
companies, however, were represented by the same agent and belong
to the same insurance group.  Ewans' Resp. SOF Hartford Casualty

13

¶¶ 23-24; 44.  As a result, in the eyes of the insured, Mosley,
the two insurance companies appeared as a single insurance
entity.  Significantly, the Auto and CGL Policies contain the
same logos and same structural form.  Also, each policy
acknowledges the existence of the other policy stating: "In
recognition of the multiple coverages insured with the Hartford,
your policy premium includes an account credit."  Auto Policy,
Common Policy Declarations; CGL Policy, Spectrum Policy
Declarations.  By signing two insurance policies at the same time
with two insurance companies belonging to the same insurance
group, an insured avoids paying for double coverage and buys
policies with dovetailing but not overlapping coverage.[3]  Since
the two policies were executed at the same time, by the same
(affiliated) parties, and constituted the same transaction, the
Court construes the two policies together.

Construing the policies together, the Court rules the
policies were meant to provide a full scope of coverage, without
overlapping each other or leaving any gaps.  See Stevens v.
Fireman's Fund Ins. Co., 375 F.3d 464, 467 (6th Cir. 2004)
(acknowledging as "better view" the principle that automobile

---

[3] It makes commercial sense to both insurers and insured, of
course, to issue two dovetailing policies with differing policy
premiums and liability limits since the underwriting risks of
insuring an auto on the nation's highways are markedly different
from the risks that inhere in the operations of a specific
business.

policies and general liability policies are usually deemed to be complementary rather than overlapping) (internal quotations omitted); see also Middlesex Mut. Assurance Co. v. Fish, 738 F. Supp. 2d 124, 132-33 (D. Me. 2010) ("[A] standard form CGL policy should mesh with a standard form [commercial] auto policy so that no risk the policies together seek to insure is excluded and no risk is insured twice"); cf. Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co., 530 F.3d 395 (5th Cir. 2008) (noting that under Mississippi law, a court reads an insurance policy as a whole, considering all the relevant portions together and, whenever possible, should give operable effect to every provision in order to reach a reasonable overall result); Standard Mut. Ins. Co. v. Bailey, 868 F.2d 893, 899 n.7 (7th Cir. 1989) (describing the "dovetail theory" that "any one occurrence can only be covered by either the automobile or the homeowner's policy - but not both").

Importantly, the Auto and CGL Policies also mirror each other's coverage and exclusions. While the Auto Policy provides coverage for accidents involving an "auto," Auto Policy 2, the CGL Policy explicitly excludes from coverage damage arising from the use of an "auto." CGL Policy 6. Also, pursuant to the Auto Policy, the only time "mobile equipment" covered by the CGL

15

Policy[4] is covered under the Auto Policy is when it is "being carried or towed by a covered 'auto.'"  Auto Policy 2.  Per the exclusions in the CGL Policy, however, mobile equipment is not covered under the CGL Policy during "transportation of 'mobile equipment' by an 'auto' owned or operated by or rented or loaned to any insured."  CGL Policy 7.  Thus, the two policies are demonstrably designed to provide comprehensive coverage without "double covering" any specific incident.  See Travelers Indem. Co. v. Citgo Petroleum Corp., 166 F.3d 761, 769 (5th Cir. 1999) (holding that the policies were "interlocked and mutually exclusive" where "[t]he applicable language in the business auto policy providing its coverage [was] virtually identical to the language of the CGL excluding coverage").

The Ewans argue that the Mack truck and tree spade could be both a "covered auto" under the Auto Policy and "mobile equipment" under the CGL Policy, relying on a line of cases where the insurer declined coverage for a vehicle specifically identified as a covered auto in an automobile policy - on the ground that the vehicle was in fact mobile equipment excluded elsewhere in the policy.  Ewans Resp. Hartford Underwriters 16-17.  For instance, the Ewans rely on Scottdale Insurance Co. v. National Security Fire & Casualty Insurance Co., 741 So.2d 424

---

[4] The Court infers that "mobile equipment" as defined in the CGL policy is meant to include, without limitation, riding lawnmowers, small off-road tractors, and earth moving equipment.

(Ala. Civ. App. 1997). In Scottsdale Insurance Co., there was a direct conflict in the language of the policy - the same truck that was expressly listed as a covered automobile was also expressly excluded from coverage under another portion of the policy. Id. at 426. The court concluded that the truck was covered by the insurance policy because "the declarations page of the policy includes the truck, which is a piece of 'mobile equipment' . . . and shows that a substantial premium was charged for liability insurance on the truck." Id.

Scottsdale Insurance Co. and its progeny are inapposite, however. Here, the Hartford Plaintiffs do not contend that the Mack truck and the tree spade are not covered by the Auto Policy. Rather, they argue that the Mack truck and the tree spade are covered by the Auto Policy because they are expressly identified as a covered "auto," and the Mack truck and tree spade are excluded from the CGL Policy because the two existing policies are construed together.

## C.   The Scope of the CGL Policy

Relying on Alpine Insurance Co. v. Planchon, 72 Cal. App. 4th 1316 (Cal. Ct. App. 1999), the Ewans argue that the Mack truck and the tree spade fall within the "mobile equipment" exception to the auto exclusion pursuant to the CGL Policy and are thus covered under both the Auto and CGL Policies.  Ewans' Mem. 8, 10-11.  Specifically, the Ewans contend that the tree

17

spade is "permanently mounted" to the Mack truck and that the Mack truck was "maintained primarily for purposes other than the transportation of persons or cargo." Id. at 7-8.

The Court is not persuaded. In Alpine, contrary to this case, the California court determined that a standard pick-up truck modified with a hydraulic scissors-lift was "mobile equipment" in a commercial general liability policy. Alpine, 72 Cal. App. 4th at 1324. The Ewans emphasize the Alpine court's reasoning that

> [t]his is not the case where the rose is a rose is a rose. . . . What Alpine appears not to appreciate is that the category of "auto" may not immediately be self-obvious, but may have some overlap with the category of "mobile equipment." . . . [T]he same vehicle could satisfy common understandings of both auto and mobile equipment.

Id. at 1321. In Alpine, contrary to this case, the parties did not identify the pick-up truck either as an auto or as mobile equipment. Rather, the court was construing the definitions of the commercial liability policy to decide whether the truck was covered or not. Here the Court need not construe the definitions of the CGL Policy because the parties expressly agreed that both the Mack truck and the tree spade constitute an "auto" and are both covered under the Auto Policy.

It is important to note - that after the Auto Accident, the Hartford Underwriters accepted coverage for the Auto Accident under the Auto Policy and paid out to the limits of its

18

liability.  Pls.' Resp. Ewans SOF ¶ 25.  Mosley, pursuant to the
settlement agreement, agreed to the disbursal of the money
without suggesting that the Mack truck was actually "mobile
equipment" instead of an "auto," and thus that greater coverage
limits applied.  Ewans' Resp. SOF Hartford Casualty ¶¶ 36, 38-39.

Construing the contracts together, the intent of the parties
and the meaning of the two documents must be determined from the
entire transaction.  See Sullivan, 882 So.2d at 135.  Reading the
Auto and the CGL Policies in tandem, the key fact is that the
parties expressly agreed that the Auto Policy would provide
insurance for the Mack truck and attached tree spade.  Hartford
Underwriters SOF ¶¶ 21, 28.  Since the Court's role is to "render
a fair reading and interpretation of the policy by examining its
express language and applying the 'ordinary and popular meaning'
to any undefined terms,"  Corban v. United Servs. Auto. Ass'n, 20
So.3d 601, 609 (Miss. 2009) (quoting Noxubee Cnty. Sch. Dist. v.
United Nat'l Ins. Co., 883 So.2d 1159, 1165 (Miss. 2004)), it
follows that this Court is bound by the parties' defined terms
and identified objects.  See also Bradley v. Old Republic Life
Ins. Co., 712 F. Supp. 90, 94-95 (S.D. Miss. 1988) (asserting
that a court ought not give an insurance policy "a strained,
forced, or unreasonable interpretation, but a fair reasonable and
sensible construction, compatible with the apparent object and
plain intention of the parties as expressed in the words of the

19

agreement" (quoting <u>Gulf Bldg. Servs., Inc.</u> v. <u>Travelers Indem.</u>
<u>Co.</u>, 435 So.2d 477, 478 (La. Ct. App. 1983))).

Pursuant to the express agreement in the "Schedule of
Covered Autos You Own" in the Auto Policy, Mosley and the
Hartford Underwriters agreed that the Mack truck and the tree
spade together constitute an "auto." Hartford Underwriters SOF
¶¶ 21, 28. Here, where the Mack truck together with attached
tree spade is listed as the only covered auto on the Auto Policy,
it follows logically that the parties intended that the CGL
Policy not cover the Mack truck and the tree spade.[5] See <u>United</u>
<u>Farm Family Mut. Ins. Co.</u> v. <u>Pearce</u>, No. 2-08-07, 2008 WL
4615795, at *5 (Ohio Ct. App. Oct. 20, 2008) (holding that the
execution of a separate automobile policy to cover the dump
truck, together with the fact that the commercial general
liability policy did not list the dump truck on the scheduled
list of equipment, "certainly indicate that it was parties'
intention that the dump truck not be covered under the CGL
policy"). None of the parties to this lawsuit dispute that the
Mack truck and the tree spade are covered under the Auto Policy.

---

[5] By reaching the conclusion that the Mack truck together
with the attached tree spade are covered under the Auto Policy
and thus not covered by the CGL Policy, the Court does not need
to attempt the analysis of whether the tree spade was mobile
equipment because it was permanently mounted to the Mack truck or
whether it was maintained primarily for purposes other than the
transportation of persons or cargo.

20

## IV.  CONCLUSION

Because the CGL Policy explicitly excludes from coverage damages "arising out of the ownership, maintenance, use or entrustment to others of any . . . auto . . . owned or operated by . . . any insured," CGL Policy 6, and because the Auto Policy expressly identifies the Mack truck and the tree spade as a "covered auto," this Court declares that the CGL Policy issued by Hartford Casualty does not provide coverage for alleged damages to the Ewans resulting from the Auto Accident.  The Auto Accident was covered exclusively under the Auto Policy with its attendant \$500,000.00 limit on liability.

**IT IS SO ORDERED** this 4th day of September 2012.

William G. Young

WILLIAM G. YOUNG
UNITED STATES DISTRICT COURT JUDGE

21